UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DIRECTV, LLC,

                              Plaintiff,

                                                                DECISION AND ORDER

    v.                                                          Case # 15-CV-474-FPG

PAUL WRIGHT and THERESA WRIGHT,
d/b/a ANAMETRICS CABLE,

                              Defendants.

_____

        Before the Court are two motions to dismiss, one from each of the two defendants in this

case.  ECF Nos. 12, 13.

## BACKGROUND

        The following facts are drawn from the complaint and are assumed to be true for

purposes of the motions to dismiss.  ECF No. 1.  Plaintiff DirecTV, LLC ("DirecTV") is a

company that provides television programming to its subscribers via satellite signals.  The

technology is essentially as follows: DirecTV sends a digital signal containing television

programming to a satellite orbiting thousands of miles above the Earth.  This signal is encrypted

by DirecTV, *i.e.*, it is electronically scrambled.  The satellite then relays the encrypted signal

back to Earth, where the signal is received by a subscriber's individual satellite dish.  The dish

transmits the signal by cable wire to a subscriber's "receiver," which decrypts the signal

according to the subscriber's chosen subscription package.  The subscriber is then able to watch

DirecTV programming.

DirecTV allows subscribers to purchase "Residential Accounts" or "Commercial Accounts." Residential Accounts are essentially for those who live in single family residences. These subscribers enter into a contract with DirecTV, called a "Customer Agreement," where they pay a monthly fee in exchange for DirecTV programming. Importantly, the Customer Agreement "strictly prohibits any re-broadcasting or retransmitting of DIRECTV programming, or viewing or use of that programming at a location other than at the subscriber's residence." ECF No. 1 at ¶ 16.

Notably, DirecTV offers an additional service if subscribers want to be able to watch programming on multiple televisions in the house. For a small monthly charge per extra television, residential subscribers can connect their primary receiver to secondary receivers throughout the house so that DirecTV programming is "mirrored" to other televisions. In line with the provision of the Customer Agreement referenced above, DirecTV requires that each secondary receiver be physically located in the subscriber's house. *Id.* at ¶ 17.

DirecTV also allows subscribers to purchase Commercial Accounts. Commercial Accounts are for businesses such as bars, stores, gyms, and employee break rooms. These businesses enter into a contract with DirecTV, called a "Commercial Viewing Agreement," where again they pay a monthly fee in exchange for programming. Importantly, the business is required to truthfully identify its service address, the nature of its business, and the type of programming to be viewed. *Id.* at ¶ 18.

With this context in mind, the Court turns to the alleged wrongful conduct by the defendants, who represent themselves *pro se*. Defendants Paul Wright and Theresa Wright allegedly own a business called Anametrics Cable ("Anametrics"). Anametrics supplies television programming to subscribers in the Buffalo, New York area. DirecTV alleges that

from 1996 to 2007, the Wrights or relatives of the Wrights created twelve Residential Accounts with DirecTV using various addresses, possibly using fake names to set up some of the accounts. For each Residential Account, they activated between six and sixteen receivers.  Notably, many of these Residential Accounts used the same address.  The Wrights also created one Commercial Account with one receiver activated.  DirecTV's essential allegation is that the Wrights, doing business as Anametrics, created these various accounts as part of a scheme to rebroadcast DirecTV programming to Anametrics subscribers.  The Wrights are alleged to have wrongfully collected subscription fees for Anametrics in connection with this rebroadcasting scheme.

Accordingly, DirecTV has filed a complaint containing a variety of claims against the Wrights, allegedly doing business as Anametrics.  Specifically, DirecTV alleges that the Wrights violated two federal statutes, the Federal Communications Act of 1934 (the "Communications Act"), 47 U.S.C. § 605, and the Electronic Communications Privacy Act of 1986 (the "Wiretap Act"), 18 U.S.C. § 2511.  DirecTV also makes state law claims against the Wrights for fraud, negligent misrepresentation, breach of contract, unjust enrichment, and conversion.  Moreover, DirecTV requests injunctive relief restraining the Wrights from, generally speaking, continuing their alleged rebroadcasting scheme in the future.

## DISCUSSION

Defendants Theresa Wright and Paul Wright now separately move to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF Nos. 12, 13.  In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir. 2005).  It need not accept as true, however, allegations that are conclusory, that is, bare, unadorned allegations that lack specificity.  *Ashcroft*

*v. Iqbal,* 556 U.S. 662, 680 (2009).  To survive a motion to dismiss, "a complaint must contain

sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"  *Iqbal,* 556

U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  In other words, the

factual allegations must permit the court "to infer more than the mere possibility of misconduct."

*Iqbal*, 556 U.S. at 679.

Because the Wrights are proceeding *pro se*, their submissions "must be construed

liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed.*

*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (alterations, citations, and internal

quotations omitted); *see also Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (observing that district

courts should afford *pro se* litigants "special solitude").

Below, the Court first addresses Theresa Wright's motion to dismiss (ECF No. 12) before

turning to Paul Wright's motion to dismiss (ECF No. 13).

### I. Theresa Wright's Motion to Dismiss

Theresa Wright's essential argument in her motion to dismiss is that she was not involved

in the Anametrics business.  ECF No. 12.  She details how she was married to Paul Wright in the

1990s and 2000s.  During this period, she knew that Paul Wright was operating Anametrics, yet

her involvement in the business "consisted of answering a phone on a few dozen occasions."

She asserts that her name was not on any of the legal documents for Anametrics, she was not a

signatory to any Anametrics accounts, and she did not have access to any Anametrics bank

accounts.  In essence, she contends that she did not at all participate in the Anametrics business,

and thus DirecTV has not stated a claim against her.  In support of these arguments, Theresa

Wright has attached to her motion to dismiss a business certificate for Anametrics that contains

Paul Wright's name, but not Theresa Wright's name.

Stated simply, these arguments are not appropriate at the motion-to-dismiss stage. At this stage, the Court simply takes the plaintiff's well-pleaded allegations as true. *See Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir. 2005). Here, DirecTV has alleged that both Paul Wright and Theresa Wright were operating Anametrics. ECF No. 1 at ¶¶ 5–6. DirecTV further alleges that Anametrics, under the operation of both Paul and Theresa Wright, rebroadcasted DirecTV programming to Anametrics subscribers, thereby deriving a financial benefit. Because the Court must accept these allegations as true, Theresa Wright's argument that they are false—namely, that she did not actually operate or participate in Anametrics—is not a fruitful argument. In basic terms, the Court's job at this early stage is simply to examine whether the allegations, taken as true, qualify as a legal claim and thus plausibly entitle DirecTV to relief. *Anderson v. Buie*, No. 12-CV-6039-FPG, 2015 WL 9460146, at *17 (W.D.N.Y. Dec. 23, 2015).

The Court notes that at a later stage in the litigation, Theresa Wright will have the opportunity to argue that DirecTV's allegations are false. For instance, in a motion for summary judgment or at trial, Theresa Wright could argue that she had nothing to do with Anametrics, and she could potentially use the Anametrics business certificate as evidence in support of this argument. But again, at the motion-to-dismiss stage, arguments about the facts of the case are unavailing. Theresa Wright makes no other arguments in support of her motion to dismiss. Accordingly, Theresa Wright's motion to dismiss (ECF No. 12) is DENIED.

**II. Paul Wright's Motion to Dismiss**

Paul Wright makes a few arguments in support of his motion to dismiss. They are construed liberally and discussed below.

*A. Argument Regarding Paul Wright's Status as a DirecTV Installer*

Paul Wright first makes an argument about the facts similar to those in Theresa Wright's

motion.   In short, Paul Wright asserts that he was not a "dealer, distributor or installer" of DirecTV equipment.   ECF No. 13 at 3.   This assertion is an attempt to refute DirecTV's allegation, made throughout the complaint, that Paul Wright installed and maintained DirecTV receiving equipment at locations not authorized by DirecTV.   ECF No. 1 at ¶¶ 36, 44, 49, 72, 81. This sort of argument is not appropriate on a motion to dismiss as, again, the Court accepts DirecTV's allegations as true at this stage.

Paul Wright also attaches various exhibits to his motion to dismiss, including a business certificate for Anametrics, a certificate indicating that Anametrics is no longer in business, and print-outs from DirecTV's website supporting his assertion that he did not or could not install DirecTV equipment.   ECF No. 13 at 6–11.   The Court does not consider materials outside the complaint on a motion to dismiss as, again, its job at this stage is not to weigh the facts.   *See Anderson*, 2015 WL 9460146 at *17.   For now, it simply accepts DirecTV's allegations as true.

In sum, Paul Wright's argument regarding his status, or non-status, as a DirecTV installer is not appropriate at this stage of the litigation.

*B. Breach of Contract Claim*

Paul Wright also challenges DirecTV's claim for breach of contract.   He first appears to call into question the existence of the contracts he allegedly entered into by asserting that the complaint "does not contain any allegations of any executed agreements" between him and DirecTV.   ECF No. 13 at 4.   Similarly, he asserts that the complaint does not specifically identify the terms of the contracts that he allegedly breached.   *Id.*   Moreover, he notes that DirecTV does not "direct the court[s] attention to any documentation that would support [its] claims" that Paul Wright contracted with DirecTV or that Paul Wright rebroadcasted DirecTV programming.

Some of these arguments are again necessarily unsuccessful because the Court is not yet

concerned with factual disputes or evidence; for this reason, DirecTV does not need to direct the Court's attention to documentation that would support its claims.  However, construed liberally, Paul Wright is also arguing that DirecTV's breach of contract allegations are not specific enough—with regard to both the existence of a contract and the terms of the contracts Paul Wright allegedly breached—to pass scrutiny under *Twombly* and *Iqbal*.  The Court addresses this argument below.

To survive a motion to dismiss for breach of contract under New York law,[1] a plaintiff must allege the following: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant,  and (4) damages." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (citations and internal quotations omitted).

Here, DirecTV has specifically and thus sufficiently alleged each one of these elements. First, contrary to Paul Wright's assertion that the complaint "does not contain any allegations of any executed agreements," DirecTV specifically alleges that the Wrights created Residential Accounts and Commercial Accounts (ECF No. 1 at ¶¶ 20–32, 72), thereby entering into agreements with DirecTV called Customer Agreements and Commercial Viewing Agreements (ECF No. 1 at ¶¶ 16, 18, 70–71).  Second, DirecTV alleges that it adequately performed under the contract by providing television programming to the Wrights.  *Id.* at ¶¶ 39, 73.  Third, contrary to Paul Wright's assertion that the complaint does not contain any specific reference to the terms of the contracts that he actually breached, DirecTV specifically alleges that the Wrights

---

[1]     As a federal court in the state of New York, the Court applies the substantive law of New York to state-law claims.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938) (state law applies to claims over which the Court has diversity jurisdiction); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 304–07 (2d Cir. 2003) (state law applies to claims over which the Court has supplemental jurisdiction).

breached the terms prohibiting them from, most notably, rebroadcasting DirecTV programming and using satellite receiving equipment at unauthorized locations. *Id.* at ¶¶ 16–18, 35–38, 72. Fourth, DirecTV alleges that it suffered harm from the beach in the form of, among other things, lost subscription revenues. *Id.* at ¶ 42.

These allegations are specific enough to state a breach of contract claim. Thus, Paul Wright's motion to dismiss this claim is denied.

### C. Communications Act Claim

DirecTV further alleges that the Wrights violated two federal statutes. First, DirecTV alleges that the Wright's alleged rebroadcasting scheme violated the Communications Act, 47 U.S.C. § 605. Specifically, DirecTV asserts that the Wrights violated the third sentence of 47 U.S.C. 605(a) (ECF No. 15 at 6), which provides as follows: "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Courts have repeatedly interpreted this sentence to prohibit the "unauthorized divulgence or use of [satellite] communications," even if the communications have been "received legally." *Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 472 (E.D.N.Y. 2012) (internal quotations omitted) (quoting *Joe Hand Promotions, Inc. v. That Place*, LLC, No. 11–CV–931, 2012 WL 2525653, at *3 (E.D. Wis. June 29, 2012)); *J & J Sports Prods., Inc. v. 4326 Kurz, Ltd.*, No. CIV.A.07-3850, 2009 WL 1886124, at *7 (E.D. Pa. June 30, 2009) (holding that a defendant violates § 605(a) by "divulging transmission of a satellite communication to unauthorized persons, even after lawfully receiving the communication); *That's Entertainment v. Old Bridge Tavern*, No. 94–CV–2612, 1996 WL 148045, at *2 (N.D. Ill. March 28, 1996) (holding that "direct evidence that defendant

broadcast[ed] the [satellite] transmission" without authorization to its patrons was "enough to violate the statute").

Here, DirecTV has plainly alleged that the Wright's rebroadcasting scheme was an "unauthorized divulgence" of satellite signals. *See Dish Network*, 893 F. Supp. 2d at 472. Most notably, DirecTV has alleged that the Wrights were residential subscribers who were only authorized to watch DirecTV programming in their house. ECF No. 1 at ¶¶ 16, 44  They were not authorized to rebroadcast DirecTV programming to Anametrics subscribers. *Id.*  Those simple allegations are enough to allow DirecTV to survive a motion to dismiss on the § 605(a) claim.

Paul Wright does not set forth an argument in his motion to dismiss that controverts this basic analysis.  With regard to the § 605 claim, he first argues that he did not actually breach a contract. ECF No. 13 at 4.  He goes on to reason that "[a]bsent any clear contractual violations," the "violations as contained in the complaint can not by their nature be willful or deceptive," and thus there was no violation of § 605. *Id.*  This is a difficult line of argument to follow, but the Court first notes that a violation of § 605 does not necessarily require a breach of contract; it only requires an unauthorized divulgence of satellite signals.  DirecTV has plainly alleged such a divulgence here.  Second, the statute does not require that a defendant's actions be willful or deceptive. *See Joe Hand Promotions, Inc. v. Elmore*, No. 11-CV-3761 KAM SMG, 2013 WL 2352855, at *6–8 (E.D.N.Y. May 29, 2013) (observing that damages are available under § 605 for willful and non-willful violations, though such damages are enhanced for willful violations).

For the reasons above, DirecTV's has adequately stated a claim under 47 U.S.C. § 605, and Paul Wright's motion to dismiss this claim is denied.

### D. Wiretap Act Claim

DirecTV also alleges that the Wrights violated the Wiretap Act, 18 U.S.C. § 2511.  This statute makes it an offense to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . ."  18 U.S.C. § 2511(1).  Stated simply, the provision is concerned with the interception of electronic communications, which includes satellite signals.  *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 844–45 (9th Cir. 2008) (assuming without discussion that § 2511 applies to the interception of satellite signals).

Paul Wright makes the same argument for the § 2511 claim that he made for the § 605 claim discussed above.  He first asserts that he did not actually breach a contract.  ECF No. 13 at 4.  He goes on to reason that "[a]bsent any clear contractual violations," the "violations as contained in the complaint can not by their nature be willful or deceptive," and thus there was no violation of § 2511.  *Id.*  ECF No. 13 at 4.  Here, again, the Court notes that a violation of § 2511 does not necessarily require a breach of contract; it only requires an interception of satellite signals.  Second, while § 2511 does indeed require a willful or "intentional[]" interception, DirecTV has certainly alleged in the complaint that the Wrights acted intentionally.  In short, DirecTV has alleged that the Wrights engaged in a pattern of conduct over many years specifically designed to rebroadcast DirecTV for their own financial benefit.  ECF No. 1 at ¶¶ 19–42.  The clear inference is that the Wrights' alleged rebroadcasting scheme was by no means accidental or otherwise unintentional.  Accordingly, Paul Wright's argument with respect to the § 2511 claim is not persuasive.

The Court observes, however, that there appears to be a separate problem with the § 2511 claim.  As explained above, the statute is concerned with the *interception* of signals.  There is a

question here about whether DirecTV has alleged that the Wrights actually intercepted a DirecTV satellite signal within the meaning of § 2511.

The word "intercept" is defined in the Wiretap Act as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). In other words, the Wiretap Act broadly defines "intercept" to mean the acquisition of a communication with some sort of a device.

Courts have understandably narrowed this definition in the context of electronic communications so that "intercept" includes only "acquisitions of communication[s] contemporaneous with transmission." *See, e.g.*, *Hoyle v. Dimond*, No. 08-CV-347C, 2013 WL 1152037, at *10 (W.D.N.Y. Mar. 19, 2013) (emphasis added) (collecting cases). So, in short, an interception requires a capture of the communication while it is in transit. As the Ninth Circuit has observed, this meaning "is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (defining the word "intercept" in the context of the Wiretap Act) (citations omitted).

With this definition of the word "intercept" in mind, it is unclear to the Court how, based on the allegations in the complaint, the Wrights intercepted DirecTV satellite signals. DirecTV does not appear to be alleging that the Wrights "seize[d]" satellite signals "before arrival" to DirecTV receivers; rather, DirecTV appears to be alleging that the Wrights *legitimately received* the signals before then rebroadcasting them to Anametrics subscribers. The critical distinction here is between an unauthorized seizure or receipt of signals, which is covered by § 2511, and an unauthorized redistribution of signals, which is not covered by § 2511.

To illuminate this distinction, it is useful to briefly examine the typical case that DirecTV brings under § 2511. DirecTV has filed a large number cases under § 2511 to combat the theft of its satellite signals. *See, e.g.*, *DirecTV, Inc. v. Schulien*, 401 F. Supp. 2d 906, 910 (N.D. Ill. 2005); *DIRECTV Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005); *In re Cases Filed by DIRECTV, Inc.*, 344 F. Supp. 2d 647, 649 (D. Ariz. 2004); *DIRECTV, Inc. v. Walsh*, 540 F. Supp. 2d 553, 554 (M.D. Pa. 2008); *Directv, Inc. v. Thomas*, 329 F. Supp. 2d 949, 950 (E.D. Mich. 2004). These cases target individuals who have used illegal devices, generally termed "pirate access devices," that allow them to steal DirecTV signals with phony receiving equipment. *See id.* In other words, these piracy cases target individuals who have illegally seized DirecTV's satellite signals.

The piracy cases are different from the case at hand in that, as should be apparent, they concern unauthorized seizures or receipts of satellite signals as opposed to unauthorized redistributions. Numerous courts have focused on this distinction in finding that § 2511 requires the unauthorized receipt, not simply the unauthorized redistribution, of a signal. *See United States v. Bond*, No. 2:13-CR-00006-MR, 2015 WL 1737052, at *4 n.6 (W.D.N.C. Apr. 16, 2015) ("Notably, however, this case does *not* involve the illegal interception of a satellite cable transmission in violation of 18 U.S.C. § 2511. The Defendant received the signals legitimately and paid for them. It was his re-transmission that was improper.") (emphasis in original); *DIRECTV, LLC v. Perugini*, 28 F. Supp. 3d 351, 356 (M.D. Pa. 2014) ("Defendant Torre was authorized to receive the signal with his DIRECTV receiver, and did not utilize a pirate access device or something similar, which is commonly seen in suits for violations of Section 2511."); *see also Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 139–41 (E.D.N.Y. 2010) ("[A]bsent an interception, neither the disclosure nor use of the contents of the communication violates the

12

Wiretap Act. . . . Plaintiff has not alleged that Newsday defendants intercepted plaintiff's [communications] through a device, but that they received the [communications] as sent to them by the distributor defendants. As discussed above, the distributors did not intercept the [communications] themselves—they were the intended recipients. The mere forwarding of [communications] by the intended recipients of those [communications] does not violate the ECPA.") (citations omitted); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (holding that defendant "did not . . . 'intercept' the communication within the meaning of the Wiretap Act, because [it] did not acquire it using a device other than" the device to which it was supposed to be sent); *United States v. Meriwether*, 917 F.2d 955, 960 (6th Cir. 1990).

There is also a substantial body of case law interpreting the word "intercept" in the context of the Communications Act, which in portions other than the one at issue in Part II.C, requires the interception, not simply the unauthorized divulgence, of a signal. This case law is not favorable to DirecTV. *See, e.g., Cablevision of Michigan, Inc. v. Sports Palace, Inc.*, 27 F.3d 566, at *4 (6th Cir. 1994) ("As the statute speaks of transmission, and the legislative history indicates that Congress was concerned with the piracy of satellite signals, any rebroadcast of cable programming . . . is not an interception") (internal citations omitted); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 141 (E.D.N.Y. 2010) ("[T]he distributors did not intercept the [communications] themselves—they were the intended recipients. The mere forwarding of [communications] by the intended recipients of those [communications] does not violate the [§ 605]").

Stated simply, DirecTV has alleged that the Wrights unlawfully rebroadcasted satellite signals. They do not appear to have alleged, however, that the Wrights intercepted such signals.

Notably, DirecTV's allegation that the Wrights installed the receiving equipment in unauthorized locations—which is made throughout the complaint and specifically in the context of the alleged § 2511 violation—does not appear to alter the basic idea that an *interception* requires an unauthorized seizure at the very first step of the scheme.  *See Perugini*, 28 F. Supp. 3d at 356 ("Plaintiff does not cite any case law supporting its position that moving an authorized receiver to a different location constitutes an interception, and we find that it does not.  Defendant Torre was authorized to receive the signal with his DIRECTV receiver, and did not utilize a pirate access device or something similar, which is commonly seen in suits for violations of Section 2511."); *Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 471–72 (E.D.N.Y. 2012) ("In this case, the Court fails to see how it matters whether the [receivers] were located at their intended addresses or some other location when they allegedly re-transmitted the signal to the [defendant's] server. . . . [T]he fact that the Defendants may have removed the . . . receivers associated with the individual accounts from the locations associated with those accounts does not constitute an "interception" under the Communications Act.").

In light of this apparent problem with the § 2511 claim, and especially in light of the fact that Paul Wright is a *pro se* litigant who moved to dismiss the § 2511 claim, the Court seeks further briefing on this issue from both parties.  DirecTV is directed to submit a brief on why the Court should not dismiss § 2511 claim given that the Wrights do not appear to have *intercepted* a satellite signal.  DirecTV's submission is due within 30 days of the date of this Order.  Paul Wright may file a response within 30 days of the day in which DirecTV submits its brief. DirecTV is also, of course, free to withdraw the § 2511 claim if it finds the claim untenable.

Until it receives this briefing, the Court reserves judgment on whether to dismiss the § 2511 claim.

*E. Injunctive Relief*

Based on the complaint, DirecTV seeks both money damages and injunctive relief. ECF No. 1 at p. 1, 24. The injunction would restrain the Wrights from, generally speaking, continuing their alleged rebroadcasting scheme in the future. ECF No. 1 at p. 24. The Court notes that injunctive relief is available under the two statutes at issue. *See* 47 U.S.C. § 605(e)(3)(B)(i); 18 U.S.C. § 2520(b)(1). It may also be available for some or all of the state law claims.

Paul Wright contends that he has not been doing business as Anametrics since 2014, and thus any request for injunctive relief is moot. ECF No. 13 at 4. DirecTV responds to this argument by asserting that "an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to (their) old ways." ECF No. 15 at 9 (quoting *Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp. 2d 655, 661 (S.D.N.Y. 2013)). Additionally, DirecTV argues that based on its allegations in the complaint—which the Court must accept as true—the Wrights continue to operate Anametrics to this day.

The Court finds DirecTV's arguments persuasive, and, more generally, is not inclined to rule out injunctive relief at this early stage in the litigation. In short, whether injunctive relief is an appropriate remedy cannot be determined unless or until the claims in the complaint are decided in favor of DirecTV. Accordingly, regardless of whether the Court ultimately agrees that injunctive relief is inappropriate in this case, Paul Wright's motion to dismiss DirecTV's request for an injunction is at this point premature.

*F. Tort Claims*

Finally, the Court turns to the state law claims against the Wrights sounding in tort. As was set forth in the background section, in addition to the two statutory claims and the breach of contract claim, DirecTV has asserted claims against the Wrights for fraud, negligent

misrepresentation, and conversion. DirecTV has also asserted a claim in quasi-contract for unjust enrichment.

Paul Wright has referenced the fraud and misrepresentation claims in his motion to dismiss. ECF No. 13 at 4 ("Plaintiff's complaint contains a long list of references to Commercial and/or Residential Viewing Agreements being made through fraud or misrepresentation but it does not contain any allegations of any executed agreements . . . .") (internal quotations omitted). In light of this reference, and in light of the fact that Paul Wright is proceeding *pro se* against highly experienced counsel, the Court observes that there appear to be deficiencies in the tort claims. It raises the specter of these deficiencies below. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."); *Triestman*, 470 F.3d at 475 ("In this time of ever increasing legal costs and complexity of litigation, the *pro se* litigant is at an insurmountable disadvantage.") (citation and internal quotations omitted).

In short, the claims for fraud, negligent misrepresentation, and conversion may be duplicative of the breach of contract claim.[2] In the complaint, DirecTV alleges that the Wrights breached contracts by creating accounts with false information, installing and maintaining equipment at unauthorized locations, and rebroadcasting DirecTV programming. ECF No. 1 at ¶ 72. DirecTV then appears to allege that the Wrights committed fraud, negligent

---

[2] The unjust enrichment claim also may be duplicative of the breach of contract claim. However, because Paul Wright appears to dispute the existence of the contracts between him and DirecTV in his motion to dismiss (ECF No. 13 at 4), the Court does not yet contemplate dismissal of the unjust enrichment claim. *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 580 (E.D.N.Y. 2014) ("While plaintiffs' unjust enrichment claim is derived from the same set of facts as plaintiffs' breach of contract claim, plaintiffs may plead alternative theories of liability at [the motion-to-dismiss] stage because [the defendant] disputes the existence of an agreement.").

misrepresentation, and conversion by, likewise, creating accounts with false information, installing and maintaining equipment at unauthorized locations, and rebroadcasting DirecTV programming. *Id.* at ¶¶ 55, 62, 81. Under New York law, a plaintiff may not simply repackage a breach of contract claim into a tort claim. *See Waverly Properties, LLC v. KMG Waverly*, LLC, 824 F. Supp. 2d 547, 564–65 (S.D.N.Y. 2011) ("It is a well-established principle of New York law that a tort claim that merely restates a breach of contract claim cannot stand.").

There are a few circumstances, however, in which a plaintiff may bring parallel contract and tort claims. As for parallel fraud claims, a plaintiff may bring such a claim if the plaintiff "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 342 (S.D.N.Y. 2005) (citations and internal quotations omitted).

It is not apparent that DirecTV's fraud allegations fall into any one of these categories. Accordingly, the Court also requests further briefing from the parties as to why the fraud claim is not duplicative of the contract claim. In submitting this briefing, the parties should be mindful of a few principles. First, though the case law in New York is somewhat muddled on this issue, it is not enough to allege that the Wrights entered the contracts with an undisclosed intent not to perform. *See Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 244 (S.D.N.Y. 2006) ("[A]llegations of false statements of intent to perform contractual obligations are not sufficient to support a fraud claim."); *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010) ("Even a deliberately false statement that the defendant intends to perform on a contract, when he does not, will not suffice" to support a parallel fraud claim).

Second, though DirecTV seeks punitive damages for the fraud claim (ECF No. 1 at ¶ 60), such damages are not available for a fraud claim that "arises from" a contract claim unless the conduct "was aimed at the public generally." *Sofi*, 444 F. Supp. 2d at 247–48.   Here, DirecTV does not appear to be alleging that the Wrights' scheme was aimed at the public.   Third, as a general matter, a party pleading fraud is subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b).

The same deficiency appears to blight DirecTV's negligent misrepresentation claim. Accordingly, the Court also seeks further briefing at to why the negligent misrepresentation claim is not duplicative of the contract claim.   In submitting this briefing, the parties should again be mindful of a few principles.   First, even if the negligent misrepresentation claim is not duplicative of the contract claim, a negligent misrepresentation claim requires a "special or privity-like relationship between defendants and plaintiffs." *Jeffers v. Am. Univ. of Antigua*, 125 A.D.3d 440, 443 (N.Y. App. Div. 2015).   Typically, this means that the defendant must have "unique or specialized expertise," or "a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996).   It is not apparent, based on the complaint, that such a relationship exists between DirecTV and the Wrights.   Second, regardless of whether the misrepresentation claim is duplicative and regardless of whether DirecTV has alleged the requisite relationship, under New York's economic loss rule, "a plaintiff asserting a claim of negligent misrepresentation who has not suffered any personal or property damage is limited to an action in contract." *Cherny v. Emigrant Bank,* 604 F.Supp.2d 605, 609 (S.D.N.Y. 2009).   The purpose of this rule is to, unsurprisingly, prevent "contract law from drowning in a sea of tort." *BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013)

(alterations, citations, and internal quotations omitted). Third, since negligent misrepresentation is a type of fraud, a party pleading negligent misrepresentation is once again subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See Naughright v. Weiss*, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011).

Finally, the Court observes that the conversion claim is also based on the same facts as the contract claim. Thus, the Court seeks further briefing as to why DirecTV's conversion claim is not duplicative of the breach of contract claim. *See AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04-CV-8832 (KMK), 2007 WL 2962591, at *7 (S.D.N.Y. Oct. 10, 2007). As a further potential deficiency with the conversion claim, other courts have found that plaintiffs cannot recover for both conversion and a 47 U.S.C. § 605 violation for the same conduct. *See Joe Hand Promotions, Inc. v. Flamingo's Food & Spirits, L.L.C.*, No. CIV.A. 0:11-2431-MBS, 2012 WL 2048192, at *2 (D.S.C. June 5, 2012) ("[R]ecovery under both § 605 and the tort of conversion would result in an impermissible double recovery for the same loss.").

In sum, the Court requests further briefing from the parties on why the tort claims are not duplicative of the contract claims. In other words, it requests briefing on why the tort damages are not recoverable under the breach of contract theory or, alternatively, the quasi-contract theory of unjust enrichment. In submitting this briefing, the parties are urged to keep in mind the principles above, which, especially for the negligent misrepresentation and conversion claims, call attention to problems beyond just the contract duplication issue. Once again, DirecTV has 30 days from the date of this Order to submit its brief. Paul Wright may file a response within 30 days of the day in which DirecTV submits its brief. DirecTV remains, of course, free to withdraw its tort claims if it finds that they are untenable.

Until it receives this briefing, the Court reserves judgment on whether to dismiss the tort claims.

## CONCLUSION

For the reasons above, Theresa Wright's motion to dismiss (ECF No. 12) is DENIED. Paul Wright's motion to dismiss (ECF No. 13) is DENIED in part. The Court requests further briefing on the 18 U.S.C. § 2511 claim and the tort claims in accordance with the discussion in Part II.D and Part II.F. To reiterate, DirecTV's brief is due within 30 days of the date of this Order, and Paul Wright may submit a response within 30 days of the day in which DirecTV submits its brief. The supplemental briefs shall not exceed 25 pages. For now, the Court reserves judgment on whether to dismiss the § 2511 claim and the tort claims.

IT IS SO ORDERED.

DATED:      June 3, 2016
            Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court