UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DIRECTV, LLC, a California limited liability
company,
                                    Plaintiff,
                                                    Case # 15-CV-474-FPG
v.                                                  DECISION AND ORDER

PAUL WRIGHT and THERESA WRIGHT,
d/b/a ANAMETRICS CABLE,
                                    Defendants.

## INTRODUCTION

Plaintiff DIRECTV, LLC, brings this action against Defendants Paul and Theresa Wright, alleging that they unauthorizedly transmitted DIRECTV's satellite television programming to subscribers of their cable company, Anametrics Cable, in violation of 47 U.S.C. § 605(a). ECF No. 1 ¶ 1. This case has been pending for over four years and has not moved past the pleadings stage. Now before the Court is DIRECTV's request for entry of a default judgment against the Wrights (ECF No. 53) and the Wrights' opposing request for vacatur of the clerk's defaults that have already been entered against them (ECF No. 52). For the reasons stated below, DIRECTV's request for a default judgment is GRANTED as to Paul Wright but DENIED as to Theresa Wright.

## FACTUAL ALLEGATIONS

DIRECTV alleges that between 1996 and 2014, the Wrights, doing business as Anametrics Cable, engaged in a scheme whereby they unauthorizedly transmitted satellite television programming signals they had purchased from DIRECTV to customers of their unlicensed cable company, Anametrics. To do so, they created 12 DIRECTV residential subscriber accounts and one commercial account—sometimes using fake names and contact information—and obtained between six and 16 receivers per account. ECF No. 1 ¶¶ 20-32. At the time they created each

account, they misrepresented to DIRECTV the location where the receivers would be installed and the manner in which they would be used: they gave DIRECTV certain purported residential or commercial service addresses but actually installed the receivers in "headends"—master systems of multiple receivers through which satellite programming is consolidated and then redistributed through a cable network. *Id.* ¶ 36; *see also* ECF No. 40-1 at 23; *United States v. Harmelech*, 927 F.3d 990, 992 (7th Cir. 2019) (describing headends in the context of a similar scheme involving DIRECTV).

Although the Wrights paid DIRECTV for the programming, they did not pay as much as they should have: by creating residential or commercial service accounts as if they were merely buying television content for their own home or office, they avoided paying DIRECTV on a per-subscriber basis—as cable companies typically do—and were thus able to obtain and supply programming for the Anametrics Cable system at a fraction of the normal cost. ECF No. 1 ¶¶ 33-39, 42-47; ECF No. 40-2 ¶ 54-55.

In 2012, DIRECTV received a report of possible theft of its services and began an investigation through which it learned that the Wrights were fraudulently obtaining its satellite television programming and distributing it over the Anametrics Cable system. ECF No. 40-1 at 10. Consequently, DIRECTV brought this suit against the Wrights.

**PROCEDURAL HISTORY**

DIRECTV filed its complaint against the Wrights on May 29, 2015. ECF No. 1. They were served on September 1, 2015, making their answers due by September 22, 2015. ECF Nos. 10, 11.

On September 18, 2015, the Wrights each filed a motion to dismiss the complaint. ECF Nos. 12, 13. On June 3, 2016, the Court denied Theresa's motion in full, denied Paul's motion in

part, and ordered supplemental briefing as to some of DIRECTV's claims. ECF No. 19. On July 5, 2016, DIRECTV voluntarily dismissed the claims on which supplemental briefing had been ordered. ECF No. 20. Thus, the Court denied the remainder of Paul's motion to dismiss as moot and ordered both Wrights to answer or otherwise respond to the complaint by August 3, 2016. ECF No. 21.

On August 3, 2016, the Wrights both filed motions for extension of time to respond to the complaint. ECF Nos. 22, 23. The Court granted their motions on August 8, 2016, giving them until September 6, 2016 to respond. ECF Nos. 22-23.

On September 8, 2016, two days after the deadline, Paul moved to dismiss the complaint, and on October 3, 2016, he filed another motion to dismiss. ECF Nos. 25, 30. Theresa did not respond to the complaint at all.

On September 26, 2016, DIRECTV moved for a clerk's entry of default against Theresa, and the clerk entered the default the next day. ECF Nos. 27, 28

On June 29, 2017, the Court denied Paul's two pending motions to dismiss and ordered him to answer the complaint by July 31, 2017. ECF No. 32.

On July 28, 2017, Theresa—despite having been defaulted—moved for an extension of time to hire an attorney, which the Court denied. ECF Nos. 34, 39.

Paul failed to answer the complaint by July 31, 2017. Consequently, on August 10, 2017, DIRECTV moved for a clerk's entry of default against him, and the clerk entered the default the next day. ECF Nos. 36, 37.

Two weeks later, on October 19, 2017, DIRECTV moved for default judgment as to both Paul and Theresa. ECF No. 40. The Court ordered the Wrights to respond to the motion by November 17, 2017. ECF No. 41. Instead of doing so, on November 17, 2017, the Wrights filed

another motion to dismiss. ECF No. 42. On February 9, 2018, Theresa moved the Court to appoint counsel for her. ECF No. 44.

The Court set a hearing on the pending motions for September 7, 2018. At the hearing, the Court denied the Wrights' motion to dismiss (ECF No. 42) and told them that they had repeatedly failed to timely respond to the complaint. The Court denied Theresa's motion to appoint counsel (ECF No. 44) and reserved on DIRECTV's motion for default judgment (ECF No. 40). The Court expressed concern about the age of the case and the expense DIRECTV had to incur to litigate the Wrights' successive motions to dismiss. The Court told the Wrights that if it denied the motion for default judgment, then they would have to file an answer within a short period of time.

Following the hearing, on September 19, 2018, the Court issued a Decision and Order denying DIRECTV's motion for default judgment. ECF No. 46. The Court analyzed the three factors that are to be considered upon a motion a default judgment: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013). As to the first factor, the Court concluded that, while the Wrights had acted more than negligently, they had not acted egregiously or deliberately; although they had failed to comply with Court orders, they had not totally ignored the litigation. As to the second factor, the Court found that the Wrights had proffered potentially meritorious defenses in their motions to dismiss. As to the third factor, the Court found no prejudice to DIRECTV other than delay. Thus, the Court denied DIRECTV's motion for default judgment and ordered the Wrights to answer the complaint by October 26, 2018. The Court explicitly warned the Wrights that failure to answer the complaint could result in sanctions, including the entry of a default judgment against them.

Nevertheless, on October 26, 2018, the Wrights filed yet another motion to dismiss—the sixth in this case. ECF No. 47. The Court denied the motion to dismiss on December 21, 2018 and ordered the Wrights to show cause by January 25, 2019 why it should not enter a default judgment against them. ECF No. 50.

On January 25, 2019, the Wrights filed a response to the Court's Order to Show Cause and finally filed an answer. ECF No. 52.

On February 11, 2019, DIRECTV filed a reply to the Wrights' response to the Order to Show Cause in which it challenged the sufficiency of the Wrights' response and renewed its request for a default judgment. ECF No. 53. This renewed request is now before the Court.

Also before the Court is the Wrights' response to the Order to Show Cause and their untimely answer, which the Court treats as a motion to vacate the clerk's defaults against them.[1] *See Guangxi Nanning Baiyang Food Co. v. Long River Int'l, Inc.*, No. 09 Civ. 3059 (TPG), 2010 U.S. Dist. LEXIS 31217, at *7 (S.D.N.Y. March 30, 2010) ("The filing of a late answer is tantamount to a motion to vacate a default.").

## DISCUSSION

### I. Whether the Wrights' Litigation Conduct Warrants a Default Judgment

DIRECTV's motion for default judgment and the Wrights' request to vacate the clerk's defaults are governed by the same three factors: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (summary order); *see also Pecarsky v. Galaxiworld.com, Ltd.*,

---

[1] The clerk's defaults against the Wrights have not been vacated. *See* ECF Nos. 28, 37. Although the Court permitted the Wrights to answer the complaint after they had already been defaulted, *see* ECF No. 46, they failed to timely do so, and thus the defaults were never vacated.

249 F.3d 167, 171 (2d Cir. 2001). "Of these factors, willfulness carries the most weight. Though each factor is to be considered, a 'default should not be set aside when it is found to be willful.'" *De Curtis*, 529 F. App'x at 86 (quoting *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991)). Here, for the reasons stated below, the Court finds that the balance of factors warrants the entry of a default judgment against Paul but not against Theresa.

### A. Willfulness

When the Court considered DIRECTV's first motion for default judgment in September 2018, it concluded that the Wrights had not willfully defaulted. Although they had disobeyed the Court's orders to answer the complaint (ECF Nos. 21, 24, 32, 46),[2] they had consistently participated in the case and did not appear to be purposefully delaying it. ECF No. 46 at 4. Mindful of the Wrights' *pro se* status, the Court denied DIRECTV's motion for default judgment, ordered the Wrights to answer the complaint, and explicitly warned them that failure to do so could result in sanctions, including the entry of a default judgment. ECF No. 46 at 6.

Since then, things have changed. Despite the Court's explicit instructions and warning, the Wrights filed a sixth motion to dismiss. ECF No. 47. The Court could have defaulted the Wrights immediately thereafter, but instead it offered the Wrights a chance to show cause why it should not do so.

The Wrights fail to show good cause. They merely apologize to the Court "for not responding properly" and indicate that they tried in vain to find an attorney and then sought help from the Court's *Pro se* Assistance Program. ECF No. 52 at 4. They provide no explanation for

---

[2] The Court's July 6, 2016 and August 8, 2016 orders directed the Wrights to answer or otherwise respond to the complaint. ECF Nos. 21, 24. Theresa did neither. ECF No. 28. While Paul's September 8, 2016 and October 3, 2016 motions to dismiss (ECF Nos. 25, 30) technically complied with the Court's July 6, 2016 and August 8, 2016 orders since they "otherwise responded" to the complaint, on June 29, 2017, the Court specifically directed Paul to file an answer, ECF No. 32, and on September 19, 2018, the Court repeated this directive to both Wrights and explicitly warned them that failure to obey it could result in a default judgment. ECF No. 46.

why they waited for years to seek assistance or why they failed to answer the complaint after the Court had repeatedly ordered them to do so.

As DIRECTV points out, the Wrights are not federal court novices. In 2011, they filed a lawsuit in this district which they litigated *pro se* for over four years before it was ultimately dismissed on summary judgment. *Wright v. Szcuzur*, No. 11-CV-140S, 2012 U.S. Dist. LEXIS 10872 (W.D.N.Y. Jan. 28, 2012). This multi-defendant case involved motions to dismiss and answers, so it is clear that the Wrights have dealt with these types of court filings. And in that case, like here, the Wrights filed several motions for extensions of time on the basis that they were trying to retain an attorney. *See* ECF No. 53 at 5-6.

Moreover, in his November 20, 2017 motion to dismiss (ECF No. 42) and at the September 7, 2018 hearing, Paul argued that DIRECTV had failed to follow Local Rule of Civil Procedure Rule 7, paragraph 8, which requires attorneys to serve *pro se* litigants with printed copies of any unpublished legal decisions they cite. Paul's reference to this specific Local Rule undermines his affectations of ignorance as to the Federal Rules of Civil Procedure, or at least suggests that he was capable of figuring out how to file an answer.

Thus, while the Court gave the Wrights the benefit of the doubt up through the September 7, 2018 hearing, the Court now finds that their subsequent conduct demonstrates willfulness.

### B. Meritorious Defense

To justify the vacatur of a default, a defendant must demonstrate a meritorious defense. "This requirement is subject to a low threshold that may be met where defendants deny all material allegations and stand ready to assert several affirmative defenses." *Sheet Metal, Air, Rail & Transp. Workers Local Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 15-CV-2224 (KAM)

(PK), 2018 U.S. Dist. LEXIS 152240, at *18 (E.D.N.Y. Sep. 4, 2018) (citation and internal quotation marks omitted).

In its September 19, 2018 Decision and Order, the Court found that the Wrights demonstrated a meritorious defense because their various motions to dismiss had argued that Paul never contracted with DIRECTV for the receivers, that DIRECTV is not entitled to damages because Anametrics Cable ceased business operations in 2014, and that Theresa should not be held liable because the complaint does not contain allegations that she was involved in the alleged scheme. ECF No. 46 at 4-5.

However, at this point, the Wrights' motions to dismiss have all been denied, and the Wrights' untimely answer consists only of general denials and no affirmative defenses. ECF No. 52 at 2-3. "Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts." *Sony Corp. v. ELM State Elecs., Inc*., 800 F.2d 317, 320-21 (2d Cir. 1986) (affirming district court's denial of motion to vacate default). The Wrights have not done so here.

Further, even the defenses that the Court previously accepted as potentially meritorious are dubious and fail to establish a "complete" defense. *See Guangxi*, 2010 U.S. Dist. LEXIS 31217, at *10 ("A defendant seeking to prevent entry of a default judgment must present some evidence beyond conclusory denials to support his defense. The test of such defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.") (internal citation omitted)).

For example, Paul's argument that he never contracted with DIRECTV for the receivers is contradicted by other portions of his motions. *Compare* ECF No. 25 at 3 and 42 at 2, ¶ 2 (both denying contracting with DIRECTV) *with* ECF No. 42 at 2, ¶ 3 (asserting that "Paul Wright

contracted with DIRECTV to install receivers and activate them over a number of years between approximately 1996 and 2007). Moreover, even if Paul did contract with DIRECTV for the receivers, DIRECTV alleges that Paul obtained the receivers by giving DIRECTV false information and used the receivers in a contractually unauthorized manner. And at the September 7, 2018 hearing, Paul never denied having the 85 receivers. Instead, he suggested that he paid for them and that somebody from DIRECTV set them up for him. He said that he had limited technical knowledge, but he also explained that he ran a voice-over-IP and high speed internet business, and that he now works doing basic network repair and installing TV antennas.

Additionally, Paul's argument that Anametrics Cable ceased business operations in 2014 does not absolve it of any alleged misconduct prior to 2014. Accordingly, none of his defenses are sufficient to prevent the entry of a default judgment.

Theresa's defenses, however, are somewhat different. Although her joint answer with Paul consists only of general denials and thus fails to establish a meritorious defense, the Wrights have both consistently asserted that Theresa was not involved with Anametrics or the alleged DIRECTV scheme. Specifically, in their various motions to dismiss, the Wrights argued that Theresa did not control or direct, or have the right to control or direct, Anametrics' business; that she was not a contact person for Anametrics; that she did not take any actions on behalf of Anametrics; that she was a school teacher and church employee rather than an owner of Anametrics; that her name is not on any of Anametrics' legal or financial documents, and that the extent of her involvement in Anametrics was to occasionally answer the phone in the Wrights' home office. ECF Nos. 12 at 3-4; 42 at 2, ¶ 4.

At the September 7, 2018 hearing, Theresa repeatedly denied knowledge of anything to do with DIRECTV or Anametrics. DIRECTV indicated that it had named Theresa in the complaint

because her maiden name and contact information had been used to establish some of the fraudulent accounts, but these allegations are consistent with DIRECTV's other allegations that Paul used fake information to establish the DIRECTV accounts. Additionally, the Wrights submitted a business certificate demonstrating that Anametrics is a "d/b/a" of Paul's only, which DIRECTV has not rebutted. Accordingly, the Court finds that Theresa has demonstrated the existence of a meritorious defense.

### C. Prejudice to DIRECTV

DIRECTV argues that the Wrights prejudiced it by forcing it to litigate successive, meritless motions to dismiss at its considerable expense for years. ECF Nos. 53 at 4, 6. Generally, "[t]he delay caused in vacating a default judgment does not itself constitute prejudice. Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Sales v. Republic of Uganda*, No. 90 Civ. 3972 (CSH), 1992 U.S. Dist. LEXIS 19932, at *12 (S.D.N.Y. Dec. 28, 1992).

Here, DIRECTV argues that the Wrights' default and refusal to participate in discovery has hampered its ability to collect evidence and determine its actual damages. For example, DIRECTV has been unable to determine the total number of unauthorized subscribers on Anametrics' cable system. *See* ECF No. 40-1 at 22 n. 9.

Additionally, delay can be prejudicial for Rule 55 purposes where it will diminish a plaintiff's ability to collect on a judgment. *See, e.g.*, *Chudomel v. Dynamic Recovery Servs.*, No. 12-cv-5365 (NGG) (RLM), 2013 U.S. Dist. LEXIS 160226, at *14 (E.D.N.Y. Sept. 11, 2013) ("[T]he potential prejudice to plaintiff if the entry of default were vacated consists of her diminished ability to collect on a judgment against defendant: defendant's attorney acknowledged . . . that defendant is suffering from financial troubles."). Here, at the September 7,

2018 hearing, both Paul and Theresa Wright indicated that they were poor and had no funds from which DIRECTV could collect on a judgment. "The longer the Court delays in adjudicating plaintiff's motion, the greater the chance that plaintiff will be unable to recover against defendant[s]." *Id.* at 14-15.

### D. Balance of Factors

Considering all of the factors, the Court concludes that default judgment is warranted against Paul, but not Theresa. The Court is well aware that "[d]efault judgments are disfavored, as there is a clear preference for cases to be adjudicated on the merits. Nonetheless, default judgment is an appropriate sanction for 'defaults that arise from egregious or deliberate conduct.'" *1st Bridge LLC v. 682 Jam. Ave., LLC*, No. 08-CV-3401 (NGG)(MDG), 2009 U.S. Dist. LEXIS 8859, at *2 (E.D.N.Y. Feb. 4, 2009) (quoting *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)) (internal citation omitted).

Here, the Wrights filed several successive motions to dismiss, failed to answer the complaint for over three years, and failed to show good cause for their conduct. For over three years, the Court gave the Wrights the benefit of the doubt and offered them numerous chances to answer the complaint, but after ignoring the Court's clear directives and its explicit warning of the consequences for failure to file an answer, second chances are no longer warranted.

Mindful of the fact that the Wrights are *pro se* litigants who have participated in this case, and although courts are not required to exhaust possible lesser sanctions before entering a default judgment, the Court has considered whether lesser sanctions are available. *See Park v. Sancia Healthcare, Inc.*, 2019 U.S. Dist. LEXIS 122721, at *7 (S.D.N.Y. July 22, 2019). The Court concludes that they are not. Because the Wrights have no funds, monetary sanctions would not be effective, and striking the Wrights' untimely answer would put them in the same position they are

in now. Accordingly, the Court finds that a default judgment is appropriate against Paul and declines to vacate the clerk's default against him.

In light of Theresa's meritorious defense, however, the Court declines to enter a default judgment against her. In exercising their discretion to enter a default judgment or not, courts may consider other factors, such as the amount of money potentially involved and whether the default judgment would bring about a harsh or unfair result. *See United States v. Foo Yuan Food Prods. Co.*, No. 18 CV 4689 (ENV)(CLP), 2019 U.S. Dist. LEXIS 189462, at *7 (E.D.N.Y. Oct. 30, 2019). Here, DIRECTV seeks $85,000 to $850,000 in statutory damages—a large sum which would bring about a harsh result against an individual uninvolved in the wrongdoing. Therefore, the Court vacates the clerk's default against Theresa and denies DIRECTV's motion for a default judgment against her.

## II. Whether the Allegations of the Complaint Establish Paul's Liability

"A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment. Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

Here, DIRECTV seeks a default judgment on Claim 1 of its complaint for receiving and assisting others in receiving satellite transmissions in violation of 47 U.S.C. § 605(a). Section 605(a) provides in relevant part that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

The Court has already determined that DIRECTV states a cause of action for violation of § 605(a). *See DIRECTV, LLC v. Wright*, No. 15-CV-474-FPG, 2016 U.S. Dist. LEXIS 72769, at *1-4, 12-13 (W.D.N.Y. June 3, 2016) (describing allegations of complaint in detail and denying the Wrights' motions to dismiss); *see also Dish Network L.L.C. v. World Cable Inc*., 893 F. Supp. 2d 452, 472 (E.D.N.Y. 2012) (holding that § 605(a) prohibits the "unauthorized divulgence or use of [satellite] communications," even if the communications have been "received legally"); *DIRECTV, LLC v. Borbon*, No. 14-CV-3468 (KAM)(LB), 2015 U.S. Dist. LEXIS 98828, at *7 (E.D.N.Y. July 29, 2015) ("Section 605 applies to radio communications, which includes television programming transmitted or intercepted by satellite, as in the instant case.").

Because courts decide liability on motions for default judgment using the same standards applicable to motions to dismiss, *see Astoria Energy II LLC v. HH Valves Ltd*., No. 17-CV-5724 (ENV) (RER), 2019 U.S. Dist. LEXIS 130728, at *5 (E.D.N.Y. Aug. 2, 2019), the Court concludes that DIRECTV has established Paul Wright's liability under § 605(a) here.

### III. Damages

Once liability is established, the court assesses whether the plaintiff has established its damages to a reasonable certainty. *Credit Lyonnais Sec., Inc. v. Alcanture*, 183 F.3d 151, 155 (2d Cir. 1999). Unlike allegations related to liability, allegations related to damages are not accepted as true. *Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981). Rather, a court must conduct an inquiry and a plaintiff must submit evidence to prove the amount of damages. *Belizaire v. Rav Investigative & Sec. Servs*., 61 F. Supp. 3d 336, 345 (S.D.N.Y. 2014). A damages inquest may proceed by hearing, but a court need not conduct a hearing "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

A "plaintiff who has established liability under Section 605(a) may elect between actual damages . . . or statutory damages." *J & J Sports Prods. v. El Sonador Café Rest., Inc*., No. 15 Civ. 6934 (NG) (VMS), 2017 U.S. Dist. LEXIS 1117, at *19 (E.D.N.Y. Jan. 3, 2017) (citing 47 U.S.C. §605(e)(3)(C)(i)(II)). DIRECTV seeks statutory damages. ECF No. 40-1 at 15-16.

### A. Amount of Statutory Damages

An aggrieved party may recover statutory damages in an amount between $1,000 and $10,000 for each violation of § 605(a) as the court considers just. *Borbon*, 2015 U.S. Dist. LEXIS 98828, at *9 (citing § 605(e)(3)(C)(i)(II)). "A court has discretion to determine the number of violations and assess damages for each violation. The statute does not clearly define 'violation;' rather, a court decides which acts of a defendant constitute a violation." *Zuffa, L.L.C. v. Pryce*, No. 8: 12-CV-1584 (NAM/RFT), 2013 U.S. Dist. LEXIS 134687, at *5 (N.D.N.Y. Sep. 20, 2013) (internal citation omitted).

#### 1. Number of Violations

In cases where, as here, the defendant violated the statute by unauthorizedly distributing the plaintiff's programming to third-party subscribers, courts have keyed the number of violations to the number of subscribers. For example, in *Sky Cable, LLC v. Coley*, No. 5:11-cv-00048, 2013 U.S. Dist. LEXIS 160571 (W.D. Va. Nov. 7, 2013), the defendants provided DIRECTV programming to 2,561 subscriber units at a resort but only reported and paid DIRECTV for 168 subscriber units. *Id.* at *21. The court rejected the defendants' argument that they only committed a single violation because they used a single headend and cable system to receive and transmit the programming to all the subscriber units at the resort, and instead found that each of the 2,393 unpaid units were discrete violations. *Id.* at *21-25; *see also DIRECTV, LLC v. OLCR, Inc*., No. 13-3358, 2016 U.S. Dist. LEXIS 120421 (E.D. Pa. Sep. 6, 2016) (where the defendants

fraudulently brokered television service contracts between the plaintiff and numerous government facilities around the country, the court found 6,081 violations—one for each subscribing government facility).

Here, during the course of its investigation, DIRECTV was able to confirm the existence of at least 19 Anametrics Cable subscribers who received the unauthorized programming. However, DIRECTV argues that because of the Wrights' default, it has been unable to determine the total number of subscribers, which it asserts is likely far greater. ECF Nos. 40-1 at 22-23; 40-2 at 12. Accordingly, DIRECTV suggests basing the number of violations on the number of receivers the Wrights used as part of their scheme. ECF No. 40-1 at 22-23. DIRECTV determined that the Wrights had activated a total of 126 receivers between the 13 accounts it opened, and at the time DIRECTV learned of the scheme and began its investigation, 85 of the receivers were still active. ECF No. 40-1 at 15. Thus, DIRECTV asks the court to find 85 violations, which it claims is "undoubtedly a significantly more conservative" number than the total number of Anametrics subscribers. ECF No. 40-1 at 22.

It is not clear to the Court why this is so. DIRECTV has not presented evidence regarding the number of receivers that would generally service a given number of subscribers or otherwise explained why there are likely to be far more than 85 subscribers. The Court is cognizant of DIRECTV's assertion that the Wrights' default has hampered its ability to obtain evidence and determine its damages, but even on a default, the plaintiff must still establish its damages to a reasonable certainty. *Credit Lyonnais*, 183 F.3d at 155; *see also DIRECTV, LLC v. Borbon*, No. 14-CV-3468 (KAM)(LB), 2015 U.S. Dist. LEXIS 98828, at *11 (E.D.N.Y. July 29, 2015) (awarding the statutory minimum amount of damages where plaintiff failed to submit sufficient damages evidence).

Moreover, while the determination of the number of violations is within the Court's discretion, DIRECTV has not provided any authority supporting the use the receivers to measure the number of violations, and the only comparable case the Court has found declined to adopt a similar measure. *See DIRECTV, Inc. v. Grady*, No. 5:06-CV-163-FL, 2007 U.S. Dist. LEXIS 103668, at *11 (E.D.N.C. Apr. 6, 2007) (declining to base the number of violations on the total number of access cards activated and instead electing to base the number of violations on the number of fraudulent accounts created because the access cards—like receivers here—would not have functioned but for the fraudulent accounts).

Here, the Wrights created 13 fraudulent accounts, which is less than the 19 confirmed subscribers. Accordingly, the Court will use the number of confirmed subscribers, and finds 19 violations. *See generally Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2019 U.S. Dist. LEXIS 186582, at *38-39 (S.D.N.Y. Oct. 25, 2019) (holding that, while "using each subscriber as the unit of measurement in calculating statutory damages is appropriate and consistent with Second Circuit practice," a court may not presume the existence of a certain number of subscribers without evidence).

### 2. Amount of Damages Per Violation

Under Section 605(e)(3)(C)(i)(II), the Court may award damages in an amount between $1,000.00 and $10,000.00 per violation as it considers just. In determining the amount, "[t]he court may consider such factors as the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant, as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." *J & J Sports Prods. v. Lopez*, No. 05-CV-5799 (JG)

(RER), 2006 U.S. Dist. LEXIS 60105, at *8 (E.D.N.Y. June 8, 2006) (quotation and alterations omitted). Courts may also consider

> (1) whether the defendant profited as a result of his violation, (2) whether the defendant assisted or induced others in violating the statute; (3) whether the defendant's violation was willful or flagrant; (4) whether the damage award will be sufficient to deter similar conduct; and (5) whether the damage award is comparable to awards in similar cases.

*DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1131 (M.D. Ala. 2004) (citing *DIRECTV, Inc. v. Perrier*, No. 03-CV-400S, 2004 U.S. Dist. LEXIS 9258, *11 (W.D.N.Y. March 15, 2004) for the first, second, and fifth factors) (internal citations omitted).

Here, DIRECTV has not been able to determine its actual pecuniary loss, and Paul Wright has indicated that he lacks any financial resources. However, Paul presumably profited as a result of his violation: his company used DIRECTV's receivers and programming for several years before being discovered. His violation also appears to have been willful, as evidenced by his use of inaccurate names and addresses to create DIRECTV accounts. As DIRECTV describes it, Anametrics "was specifically established in order to profit on the price differential realized by obtaining programming by paying for a few customer accounts, and illegally rebroadcasting and selling that programming to an unknown number of subscribers who made monthly account payments to Defendants instead of DIRECTV." ECF No. 40-1 at 23.

Taking all these factors into consideration, the Court finds that a sum of $7,500 per violation is just. Paul's violations were willful, profit-driven, and ongoing. A significant damages award is thus warranted. However, the Court declines to impose maximum damages in the absence of additional evidence as to the scope of DIRECTV's actual damages.

This award is consistent with cases that award minimal damages for isolated or profitless violations on the one hand, and cases that award greater damages for continuing or profit-driven violations on the other hand. *Compare Perrier*, 2004 U.S. Dist. LEXIS 9258, *11 (awarding

$1,000 per violation where the defendant committed only two violations by obtaining DIRECTV programming for his own home without paying for it), *with Cablevision Sys. N.Y.C. Corp. v. Faschitti*, No. 94 Civ. 6830 (DC), 1996 U.S. Dist. LEXIS 1212, at *8 (S.D.N.Y. Feb. 6, 1996) (awarding $10,000 for a violation where the court found defendant's actions to be willful and profit-driven); *see also Grady*, 2007 U.S. Dist. LEXIS 103668, at *12-13 (awarding only $2,000 per violation where the defendant conducted a scheme similar to the one here, but finding 411 violations resulting in a total award of $822,000).

   **B. Enhanced Damages**

The statute also provides that "[i]n any case in which the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." 47 U.S.C. § 605(e)(3)(C)(ii). Courts have found willfulness where the defendant committed repeated violations or demonstrated a "sophisticated understanding of the satellite programming industry." *Joe Hand Promotions, Inc. v. Young*, No. 5:09-CV-157, 2010 U.S. Dist. LEXIS 87301, at *8 (W.D. Ky. Aug. 23, 2010).

Here, although Court finds that Paul's violations were committed willfully and for the purposes of commercial advantage or private financial gain such that enhanced damages would be appropriate, the Court declines to award them. The Court has already taken these factors into account in fixing a $7,500 per violation sum. Moreover, DIRECTV seeks a total award between $85,000 and $850,000, and the Court's award of $7,500 for each of Paul's 19 violations puts the total award of $142,500 within that range. In light of Paul's *pro se* status and financial limitations, the Court finds that enhanced damages would not be just for Paul or helpful for DIRECTV.

### C. Attorneys' Fees and Costs

DIRECTV also seeks an award of its attorney's fees and costs. "An award of fees and costs is mandatory pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). In this Circuit, all claims for attorney's fees must be supported by contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'" *KingVision Pay-Per-View, Ltd. v. Echeverria*, No. 06-CV-1266 (CBA), 2007 U.S. Dist. LEXIS 103168, at *12-13 (E.D.N.Y. Feb. 5, 2007) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). Additionally, the claimant must show that the rates requested are reasonable and in line with those in the subject community where the Court sits for lawyers with similar skills and experience. *Joe Hand Promotions, Inc. v. Terranova*, No. CV 12-3830 (FB)(VVP), 2014 U.S. Dist. LEXIS 34624, at *22 (E.D.N.Y. Feb. 5, 2014).

Because an award of attorneys' fees and costs is mandatory, the Court finds that DIRECTV is entitled to them. As to the amount, DIRECTV has indicated that it will submit an application for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d)(2). Thus, the Court will consider the amount of attorneys' fees and costs upon receiving the application.

### D. Injunctive Relief

Finally, DIRECTV seeks an injunction. Section 605(e)(3)(B)(i) authorizes final or temporary injunctions to prevent further violations of Section 605(a). "Since [DIRECTV] has shown that [Paul Wright] violated the federal statute at issue, permanent injunctive relief is appropriate." *Int'l Cablevision v. Cancari*, 960 F. Supp. 28, 31 (W.D.N.Y. 1997); *see also J&J Sports Prod. v. Garcia,* No. 06 Civ. 4297 (GBD)(HBP), 2011 U.S. Dist. LEXIS 29283, at *3 (S.D.N.Y. Mar. 20, 2011) (granting injunction upon defendant's default). Accordingly, DIRECTV's request for an injunction is granted.

# I. CONCLUSION

For the foregoing reasons, Paul Wright's request for a vacatur of the clerk's default against him is DENIED, but Theresa Wright's request for vacatur of the clerk's default against her is GRANTED. Further, DIRECTV's renewed request for a default judgment is GRANTED as to Paul Wright but DENIED as to Theresa Wright. Accordingly, within 30 days from the date of this order, DIRECTV shall submit:

- an application for attorneys' fees and costs with supporting documentation and analysis that sufficiently sets forth, for each attorney, the date, the hours expended, and the nature of the work done, as well as the reasonableness of the fee in light of the attorney's experience and skill and the prevailing fees in this district. *See, e.g.*, *Wells Fargo Bank v. LLHC Realty, LLC*, No. 6:15-cv-06680-FPG-MWP, ECF Nos. 94, 99;

- a proposed default judgment against Paul Wright incorporating the requested attorneys' fees award and DIRECTV's proposed injunction, which must comply with Federal Rule of Civil Procedure 65(d); and

- notice as to whether DIRECTV intends to pursue its claims against Theresa Wright or dismiss her, and as to whether it intends to dismiss its fifth and sixth claims.[3]

IT IS SO ORDERED.

Dated: December 16, 2019
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[3] DIRECTV's complaint asserted seven claims against the Wrights. DIRECTV voluntarily dismissed its second, third, fourth, and seventh claims. *See* ECF Nos. 20, 21. DIRECTV presently only seeks judgment on its first claim.